# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3523
_____

Christopher Jay Martin

*Petitioner - Appellant*

v.

John Fayram, Warden

*Respondent - Appellee*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: December 13, 2016
Filed: February 24, 2017
_____

Before LOKEN, MURPHY, and KELLY, Circuit Judges.
_____

MURPHY, Circuit Judge.

Christopher Martin filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his Iowa conviction for first degree murder. The district court[1] dismissed the appeal as untimely under the Antiterrorism and Effective Death Penalty

_____

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

Act's (AEDPA) one year statute of limitations. We granted Martin a certificate of appealability on whether his petition was timely filed and, if not, whether he was entitled to equitable tolling. Martin also challenges the denial of his request for independent counsel. We affirm.

I.

Christopher Martin was convicted in Iowa state court of first degree murder. The Iowa Court of Appeals affirmed the conviction and on December 8, 2004 the Iowa Supreme Court declined to review Martin's case.[2] Martin did not seek a writ of certiorari from the United States Supreme Court within the 90 days permitted by court rule. See Supreme Court Rule 13(1). In late December, Martin was transferred to a different prison and lacked access to his paperwork for "quite some time." He eventually retained new counsel and filed an application for postconviction relief in Iowa state court on February 14, 2006, alleging among other claims that both his trial and appellate counsel had provided ineffective assistance. The state court denied relief, the Iowa Court of Appeals affirmed that denial, and on July 25, 2014 the Iowa Supreme Court once again declined to review Martin's case.

Martin then sought habeas relief in federal court. Martin had lost approximately 97% of his vision in college which limited his ability to read and review documents. He was unable to access the prison email system because of its font size and lack of a voice synthesizer. Martin therefore relied on others, including his attorney and family, to keep him updated on the status of his case and to help him

---

[2]The Iowa Supreme Court denied further review on November 29, 2004 and issued procedendo (which is similar to a mandate from this court, see Dixon v. Wachtendorf, 758 F.3d 992, 993 n.2 (8th Cir. 2014)) on December 8, 2004. Because the parties measure the tolling period from the issuance of procedendo and that date is more favorable to Martin, we will use it for purposes of determining the statute of limitations in his appeal.

prepare court filings. Martin's state postconviction counsel assisted him with preparing a pro se federal habeas petition raising the ineffective assistance of counsel claims. Counsel sent Martin a petition to review and sign shortly after the Iowa Supreme Court denied further review. According to Martin, that draft petition was held up in the prison mailroom for six days until his counsel called and requested that it be delivered. Because of his blindness, Martin also had to wait for his counselor to read him the petition aloud. As a result of these delays, Martin's petition was not filed until August 22, 2014, 28 days after the Iowa Supreme Court had declined to review his case.

The state moved to dismiss Martin's habeas petition as untimely. The district court appointed Martin's state postconviction counsel to represent him in the habeas proceeding. Because Martin could potentially seek equitable tolling of the limitations period based on his counsel's pre filing conduct, the district court ordered Martin to waive his right to bring a claim challenging that counsel's assistance. Martin moved for the appointment of independent counsel to advise him on whether to waive any such claim. The district court denied the motion for independent counsel, after which Martin waived his right to bring a claim based on his counsel's effectiveness. The district court subsequently dismissed Martin's habeas petition, concluding that it was untimely filed and that Martin was not entitled to equitable tolling. Martin appeals.

II.

The parties dispute which event triggered the running of AEDPA's limitations period. Martin argues that the limitations period did not begin to run until his ineffective assistance of counsel claims were exhausted in state court through postconviction proceedings. The district court concluded that the limitations period began to run at the conclusion of Martin's direct appeal. After reviewing its interpretation of AEDPA's limitations period de novo, Earl v. Fabian, 556 F.3d 717, 725 (8th Cir. 2009), we agree with the district court.

Under AEDPA, habeas petitioners have one year from the latest of four triggering events to file an application for habeas relief in federal court. 28 U.S.C. § 2244(d)(1). Two of these triggering events are relevant here. First, AEDPA's limitations period may start to run from the date on which the relevant "judgment became final by the conclusion of direct review or [at] the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Second, the limitations period may start to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Under either circumstance, the limitations period is tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Martin argues that the relevant final "judgment" referred to in § 2244(d)(1)(A) is the state court's denial of his application for postconviction relief because that is the first decision which addressed his ineffective assistance of counsel claims. His interpretation of § 2244(d)(1)(A) is inconsistent with the text of the statute, however. We must construe the statute "as a whole," considering its various subparts and the ways in which these subparts relate to one another. Cody v. Hillard, 304 F.3d 767, 776 (8th Cir. 2002). Words or phrases that "may seem ambiguous in isolation [are] often clarified by the remainder of the statutory scheme," such as when "the same terminology is used elsewhere in a context that makes its meaning clear." United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 371 (1988). That is the situation here.

The statutory provision setting forth AEDPA's statute of limitations states that the "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1) (emphasis added). The subsection within the provision at issue here states that the limitations period shall run from "the date on which the judgment

-4-

became final." 28 U.S.C. § 2244(d)(1)(A) (emphasis added). The most reasonable reading of this statute is that "the judgment" described in subsection (d)(1)(A) is the same judgment described in section (d)(1), i.e., the judgment pursuant to which a petitioner is "in custody." Habeas petitioners such as Martin are "in custody" because of the criminal convictions they challenge, not because of subsequent postconviction decisions. See Magwood v. Patterson, 561 U.S. 320, 333–34 (2010). We therefore conclude that Martin's conviction was the relevant "judgment" under 28 U.S.C. § 2244(d)(1)(A), and that that conviction became final at the conclusion of Martin's direct appeal.

Martin argues alternatively that the factual predicate for his ineffective assistance of counsel claims arose during state postconviction proceedings, which triggered AEDPA's limitations period. See 28 U.S.C. § 2244(d)(1)(D). The factual predicates of claims are the "vital facts underlying those claims." Earl, 556 F.3d at 725 (quoting McAleese v. Brennan, 483 F.3d 206, 214 (3rd Cir. 2007)). Knowledge of the "vital facts" of a claim may be distinct from knowledge of their "legal significance," Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000), or from evidence used to support the claim, see Earl, 556 F.3d at 726.

Here, the vital facts underlying Martin's claims were known to him before the conclusion of his direct appeal. His ineffective assistance of trial counsel claim turned on his trial counsel's failure to object to certain aspects of the prosecution's closing argument. Martin was already aware of the prosecution's statements and his counsel's failure to object to those statements by the conclusion of the trial. See Keeling v. Warden, 673 F.3d 452, 461 (6th Cir. 2012). Martin's ineffective assistance of appellate counsel claim turned on his appellate counsel's failure to raise his trial counsel's alleged ineffective assistance. Martin would have been aware of his appellate counsel's failure to raise that claim on appeal as soon as he had "read the brief filed on his behalf." Owens, 235 F.3d at 360. That Martin may not have recognized the legal significance of these facts at the time they occurred, or may have

wanted to develop additional evidence, does not mean he was not actually aware of the vital facts supporting a Sixth Amendment claim before the conclusion of his direct appeal.

We agree with the district court that the latest triggering event for AEDPA's limitations period was at the conclusion of Martin's direct appeal from his criminal conviction. That conviction became final on March 8, 2005, 90 days after the Iowa Supreme Court's had declined to review Martin's case, when he could no longer timely seek a petition for a writ of certiorari from the United States Supreme Court. See Boston v. Weber, 525 F.3d 622, 624 (8th Cir. 2008). Absent statutory tolling, Martin therefore had one year from March 8, 2005 to file an application for federal habeas relief.

Martin notes that he could not have obtained federal habeas relief on his ineffective assistance of counsel claims until he had exhausted those claims in state court, and argues that it makes little sense to run the statute of limitations from long before his Sixth Amendment claims became ripe for federal adjudication. Martin is correct that there is a tension between AEDPA's one year limitations period and the requirement that petitioners exhaust state court remedies before pursuing federal habeas relief. In Iowa, for example, Martin had three years from the conclusion of his direct appeal to file a motion for state postconviction relief and only one year, excluding the time during which a properly filed state postconviction motion was pending, to file a petition seeking federal habeas relief. See Iowa Code § 822.3. Martin moved for state postconviction relief long before those three years expired, but by the time he did so, 343 of his 365 days to file a habeas petition in federal court had passed. AEDPA is designed so that a petitioner may not wish to use the full time permitted by a state to seek postconviction relief if he also intends to seek federal review of his conviction. We have declined to conclude that principles of equity and comity require tolling of AEDPA's statute of limitations during the entire time

allowed under state law for seeking state postconviction relief.[3] See Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001). The time between the conclusion of Martin's direct appeal and his motion for postconviction relief therefore counted toward AEDPA's one year limitations period.

Martin filed his application for state postconviction relief on February 14, 2006, 343 days after his conviction became final, leaving only 22 days of AEDPA's one year limitations period. That state postconviction filing statutorily tolled AEDPA's limitations period until July 25, 2014, when the Iowa Supreme Court declined to review the denial of Martin's request for postconviction relief. See 28 U.S.C. § 2244(d)(2). Martin filed his federal habeas petition on August 22, 2014, 28 days after the Iowa Supreme Court's decision and 6 days after AEDPA's one year limitations period had expired. We therefore agree with the district court and conclude that Martin's habeas petition was untimely filed.

III.

Martin argues that even if he untimely filed his habeas petition, the district court erred by denying him equitable tolling. We review the denial of equitable tolling de novo. Earl, 556 F.3d at 722. Equitable tolling is only appropriate if a petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace, 544 U.S. at 418). An extraordinary circumstance must be "beyond a prisoner's control," Jackson v. Ault, 452 F.3d 734, 736

---

[3]The Supreme Court has suggested that petitioners may mitigate this tension "by filing a 'protective' petition in federal court" and asking it to stay and abey a habeas proceeding "until state remedies are exhausted." Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005). If there is good cause for the failure to exhaust state remedies, district courts should "stay, rather than dismiss," a premature habeas petition. See Rhines v. Weber, 544 U.S. 269, 278 (2005).

(8th Cir. 2006), and rise above a "garden variety claim of excusable neglect," <u>Holland</u>, 560 U.S. at 651 (quoting <u>Irwin v. Dep't of Veteran Affairs</u>, 498 U.S. 89, 96 (1990)). Here, even assuming Martin acted diligently, we conclude that he has failed to establish that an extraordinary circumstance prevented his timely filing of the federal habeas petition.

Martin argues that his blindness constitutes an extraordinary circumstance, either by itself or in conjunction with certain conditions of his confinement. Whether equitable tolling is appropriate is a fact intensive inquiry that depends on the totality of the circumstances present in a particular case. <u>See</u> <u>Holland</u>, 560 U.S. at 649–50. Thus, although Martin is correct that a physical or mental impairment may support equitable tolling, whether it will do so will depend on its "degree and duration." <u>Nichols v. Dormire</u>, 11 Fed. App'x 633, 634 (8th Cir. 2001) (per curiam). Here, Martin has not alleged that his disability was so severe that it precluded him from filing court documents or seeking the assistance of others to do so. Actually, Martin and his family and attorney had created a system to help him manage and monitor his court proceedings. That their system led in part to an untimely filing in this case is an unfortunate, but not extraordinary, circumstance.

We also conclude that the additional circumstances alleged by Martin were not so extraordinary as to warrant equitable tolling. Martin's brief lack of access to certain court documents early in the limitations period was a reasonably anticipated condition of confinement. <u>Jihad v. Hvass</u>, 267 F.3d 803, 806–07 (8th Cir. 2001). Although a significant delay in delivering a prisoner his mail could support equitable tolling, Martin has not alleged that the six day delay here was far beyond the "ordinary time that it takes to deliver the mail." <u>See</u> <u>Spencer v. Sutton</u>, 239 F.3d 626, 630 (4th Cir. 2001) (emphasis omitted). Martin also chose to communicate via mail rather than phone "despite the impending due date" and therefore voluntarily took the risk of a minimal mail delay. <u>Paige v. United States</u>, 171 F.3d 559, 561 (8th Cir. 1999). Finally, we note that tolling is less appropriate in circumstances where a petitioner was represented by counsel as here. <u>Kreutzer v. Bowersox</u>, 231 F.3d 460, 463 (8th Cir. 2000). Considering the

totality of the circumstances, we conclude that Martin has failed to establish that extraordinary circumstances prevented him from timely filing his habeas petition. He is therefore not entitled to equitable tolling of AEDPA's one year limitations period.

IV.

Martin argues that the district court erred by requiring him to waive any claims against his counsel without providing independent counsel to advise him on the waiver. We review the denial of a motion to appoint counsel for a habeas petitioner for abuse of discretion. See Hoggard v. Purkett, 29 F.3d 469, 471 (8th Cir. 1994).

District courts may appoint indigent habeas petitioners counsel in the interests of justice. 18 U.S.C. § 3006A(a)(2)(b); see 28 U.S.C. § 2254(h). In exercising its discretion to appoint counsel, however, the district court "should first determine whether . . . [the] petitioner has presented a nonfrivolous claim," Abdullah v. Norris, 18 F.3d 571, 573 (8th Cir. 1994), and then "should consider the legal complexity of the case, the factual complexity of the case, and the petitioner's ability to investigate and present his claims, along with any other relevant factors," see Hoggard, 29 F.3d at 471.

Here, even assuming that the legal issue was complex (as is much of habeas jurisprudence) any argument for tolling based on Martin's counsel's pre filing conduct would have been close to frivolous. That is because the Supreme Court has made clear that attorney negligence, such as the miscalculation of a filing deadline, is not an extraordinary circumstance. See Lawrence v. Florida, 549 U.S. 327, 336–37 (2007). Rather, a petitioner must show that their counsel's misconduct amounted effectively to abandonment. See Holland, 560 U.S. at 659 (Alito, J., concurring). Martin could not have done so here. His counsel communicated with him before the limitations period had expired and actively worked with him to file a federal habeas petition less than one month after the Iowa Supreme Court had declined to review his

case. The district court therefore did not abuse its discretion in denying Martin's request to appoint independent counsel to advise him on whether to waive any arguments based on his counsel's conduct.

V.

Accordingly, we affirm the district court order dismissing Martin's habeas petition as untimely.

KELLY, Circuit Judge, dissenting.

In my view, it was error not to appoint independent counsel to advise Martin whether or not he should waive his right to bring a claim regarding the assistance of his attorney. To expect Martin's current counsel to attack his own competence would be unreasonable. See Robinson v. Norris, 60 F.3d 457, 460 (8th Cir. 1995). Thus, Martin has not yet had an opportunity to recount any circumstances that might form the basis of a claim that counsel had "abandoned" him. As such, it is premature to conclude that such a claim would be frivolous. Accordingly, I would decline to reach the merits of the case, and would instead reverse and remand it to the district court to appoint independent counsel to advise Martin on the waiver in the first instance. For this reason, I respectfully dissent.

_____