# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 19-2393

———————————————————

Lonnie Ray Wiseman,

*Petitioner - Appellant*,

v.

Patti Wachendorf, Warden; Federal Bureau of Prisons,

*Respondents - Appellees*.

——————————

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

——————————

Submitted: September 24, 2020
Filed: January 5, 2021

——————————

Before COLLOTON, GRUENDER, and GRASZ, Circuit Judges.

——————————

COLLOTON, Circuit Judge.

This appeal concerns a dispute over how to credit time served by a prisoner. Lonnie Wiseman is an inmate at the Iowa State Penitentiary. Under a prisoner transfer arrangement, he is serving a thirty-year sentence imposed in Arkansas state court in 1996. After Wiseman was sentenced in Arkansas, the federal government

prosecuted him for offenses committed before his incarceration, and a federal court in New Mexico sentenced him in September 1997 to a term of 595 months' imprisonment. The federal government briefly assigned Wiseman to a federal prison, but then concluded that he should have been returned to Arkansas and transferred him back there in October 1997.

Wiseman maintains that his federal sentence began to run once he was sentenced to 595 months in the federal case and transferred to the federal prison. On that theory, he brought a petition for writ of habeas corpus alleging that time served since September 1997 on his Arkansas sentence should also be credited against his federal sentence. The government contends that the 595-month federal term of imprisonment has not yet commenced, and that it will not begin to run until Wiseman finishes serving his Arkansas state sentence. The district court[1] ruled that Arkansas retained "primary jurisdiction" over Wiseman during the entire period, and granted judgment for the government. Wiseman appeals, and we affirm.

I.

The saga begins in 1995, when Wiseman was serving an Idaho state sentence and escaped from a detention facility with another man who was a federal detainee. After his escape, Wiseman committed several armed robberies in New Mexico and Arkansas. In November 1995, a state trooper in Arkansas arrested Wiseman on a state charge of aggravated robbery. Wiseman pleaded guilty, and the Arkansas state court sentenced him to 360 months' imprisonment. Wiseman began to serve that term on April 9, 1996.

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

On April 18, 1996, federal authorities took custody of Wiseman for the purpose of prosecuting him in Idaho on federal charges of aiding and abetting a federal prisoner to escape. The district court found that the government obtained custody pursuant to a writ of habeas corpus *ad prosequendum*—that is, a federal court order that demanded Wiseman's presence in federal court on a particular date. On the same day that the United States Marshal in Arkansas took custody of Wiseman, he appeared before a federal magistrate judge in the Western District of Arkansas. The court, citing Federal Rule of Criminal Procedure 40 concerning commitment of an arrestee to another district, ordered the Marshal to transfer Wiseman to the custody of the United States Marshal for the District of Idaho. Once in Idaho, Wiseman pleaded guilty to the escape charge, and the district court sentenced Wiseman to 12 months' imprisonment to run concurrently with his state sentence.

After the sentencing in Idaho, the Marshals Service transferred Wiseman to the District of New Mexico for prosecution on federal charges of robbery affecting interstate commerce and use of a firearm during a crime of violence. A jury found Wiseman guilty, and the district court sentenced him to 595 months' imprisonment on September 9, 1997.

The Marshals Service then transported Wiseman to a federal prison in Beaumont, Texas. By October 1, 1997, however, a staff member at the Bureau of Prisons determined that Wiseman's incarceration at Beaumont was a mistake, and acted to ensure that Wiseman was returned to state custody. The staff member wrote to the Marshals Service that Wiseman was inadvertently designated to the facility in Beaumont, and that "primary jurisdiction of Mr. Wiseman lies with the state of Arkansas." As a result, the Marshals Service removed Wiseman from the federal facility on October 7, and he arrived back in Arkansas on October 22, 1997.

II.

Under the "doctrine of primary jurisdiction," a prisoner serving a term in state custody generally begins to serve a federal sentence when the United States assumes primary jurisdiction over the prisoner and the prisoner is presented to serve his federal sentence. *Elwell v. Fisher*, 716 F.3d 477, 481 (8th Cir. 2013); *see also* 18 U.S.C. § 3585(a). A federal sentence does not commence, however, "when the United States merely takes physical custody of a prisoner who is subject to another sovereign's primary jurisdiction." *Elwell*, 716 F.3d at 481. The first sovereign to establish physical custody over a criminal defendant retains primary jurisdiction until it releases jurisdiction. *Id.*

Not every change in custody constitutes a release of primary jurisdiction. When a State with primary jurisdiction transfers a prisoner to the United States pursuant to a writ of habeas corpus *ad prosequendum*, for example, the prisoner is considered merely "on loan" from the State. *Id.* at 481-82; *see also Binford v. United States*, 436 F.3d 1252, 1255-56 (10th Cir. 2006). The key question is whether the first sovereign intended to relinquish its primary jurisdiction. *See Johnson v. Gill*, 883 F.3d 756, 765 (9th Cir. 2018).

Wiseman acknowledges that Arkansas obtained primary jurisdiction over him when state authorities arrested him on charges of aggravated robbery in 1995. He contends, however, that the State relinquished primary jurisdiction when it transferred him into the custody of the United States Marshal in April 1996 for prosecution on the federal escape charge in Idaho. For the first time on appeal, Wiseman asserts that the State did not transfer him to the United States based on a writ, but rather "waived" primary jurisdiction when it voluntarily released him into the custody of federal authorities.

The district court found that the State transferred custody pursuant to a writ of habeas corpus *ad prosequendum*, and this finding is not clearly erroneous. *See* Fed. R. Civ. P. 52(a)(6); *Aponte-Dávila v. Mun. of Caguas*, 828 F.3d 40, 46 (1st Cir. 2016). Wiseman's *pro se* complaint pleaded, under penalty of perjury, that on April 18, 1996, a hearing was held in federal court "on a Writ of Habeas Corpus Ad Prosequendum." R. Doc. 1, at 7. Wiseman acknowledged that the State was "presented with the Writ of Habeas Corpus Ad Prosequendum requesting custody for charges pending in the District of Idaho," *id.* at 13, and admitted that "the federal government gained temporary custody pursuant to a writ of habeas corpus ad prosequendum for the purpose of his prosecution in the District of Idaho." *Id.* at 17. The government presented a declaration from a management analyst at the Bureau of Prisons, who averred that Wiseman was taken into federal custody "pursuant to a Writ of Habeas Corpus Ad prosequendum." R. Doc. 9-16, at 3. Wiseman also attached to his complaint a custody report from the United States Marshals Service with a remark reflecting that he was released to Washington County, Arkansas, on October 22, 1997, in accordance with such a writ. R. Doc. 1-1, at 8.[2]

Wiseman suggests two reasons why the district court erred in finding that custody was transferred under a writ. Even assuming that Wiseman did not waive these arguments by pleading to the contrary, the cited reasons do not establish clear error. First, Wiseman suggests that the fact of a hearing under Federal Rule of Criminal Procedure 40, which then applied to arrests under a warrant issued in another federal district, is inconsistent with the federal government assuming custody based on a writ of habeas corpus *ad prosequendum*. Although the procedure under

---

[2]The Marshals Service report lists Wiseman's "custody status" as "RL-WHCAP" on October 22, 1997, with a remark stating "RL TO WASHINGTON CO." R. Doc. 1-1, at 8. WHCAP stands for writ of habeas corpus *ad prosequendum*, *Cain v. Menifee*, 269 F. App'x 420, 424 n.4 (5th Cir. 2008), and it is undisputed that Wiseman was released to Washington County, Arkansas, on the date specified.

Rule 40 need not be followed when a State turns over a prisoner to the United States based on a writ, prisoners sometimes assert that they are entitled to a hearing nonetheless. *E.g.*, *United States v. Sawyers*, 963 F.2d 157, 162 (8th Cir. 1992); *Bandy v. United States*, 408 F.2d 518, 521 (8th Cir. 1969); *Terlikowski v. United States*, 379 F.2d 501, 506-07 (8th Cir. 1967). That the government and the district court in Arkansas may have convened an unnecessary hearing regarding Wiseman's transfer from one federal district to another does not undermine the district court's finding that Arkansas surrendered custody to the federal government based on a writ. Second, Wiseman cites a 1997 letter from the Bureau of Prisons that says Arkansas authorities "released Mr. Wiseman to federal authorities" in April 1996. But the letter does not address one way or the other whether the State "released" Wiseman pursuant to a writ, and the district court did not clearly err in finding based on Wiseman's admissions and other evidence that a writ existed.

Because the writ itself does not appear in the record, Wiseman urges based on *Weekes v. Fleming*, 301 F.3d 1175 (10th Cir. 2002), that we should order the government to produce the document. In *Weekes*, however, the prisoner "vigorously contended" in the district court that no writ of habeas corpus *ad prosequendum* was issued, and the district court failed to address the question. *Id.* at 1178-79. Under those circumstances, the court of appeals asked the United States to produce a writ, and the government was unable to do so. *Id.* at 1179. Here, by contrast, Wiseman did not dispute the existence of a writ, and alleged that his custody *was* transferred pursuant to a writ of habeas corpus *ad prosequendum*. This court is not the proper forum for evidentiary proceedings, and the district court was not required to order production of the writ when Wiseman and the Bureau of Prisons agreed that a writ had been issued.

Wiseman next argues that even with transfer of custody under a writ of habeas corpus *ad prosequendum*, Arkansas relinquished primary jurisdiction. He contends that the federal government's act of transferring him between federal districts in Idaho and New Mexico, and the lengthy period of eighteen months that he spent in federal custody, show that the United States assumed primary jurisdiction.

Wiseman was in federal custody while he was prosecuted under separate indictments in two different judicial districts. When a prisoner is subject to multiple prosecutions, the federal government's movement of the prisoner within its jurisdiction, while he is "on loan" from a State, does not show an assumption of primary jurisdiction by the United States. In this case, after the federal prosecutions were concluded, the Marshals Service mistakenly transferred Wiseman to a federal penitentiary. But the government identified the error within three weeks and promptly returned Wiseman to Arkansas. The federal government's mistaken retention of custody does not constitute an assumption of primary jurisdiction where the State never intended to relinquish jurisdiction and the error was quickly rectified. *See Binford*, 436 F.3d at 1256. Nor does the fact that Wiseman was "on loan" for eighteen months in order to resolve two federal prosecutions in different districts justify concluding that Arkansas gave up primary jurisdiction. *See Rios v. Wiley*, 201 F.3d 257, 274 (3d Cir. 2000).

Wiseman last asserts that because other jurisdictions filed detainers with the United States, the federal government must have assumed primary jurisdiction over him. A detainer, however, does not alter the custody status of a prisoner, *Thomas v. Whalen*, 962 F.2d 358, 360-61 (4th Cir. 1992); it "merely puts the officials of the institution in which the prisoner is incarcerated on notice that the prisoner is wanted in another jurisdiction for trial upon his release from prison." *United States v. Mauro*, 436 U.S. 340, 358 (1978). That certain jurisdictions with charges pending against Wiseman notified the United States that Wiseman was wanted in those jurisdictions does not bear on whether Arkansas intended to relinquish primary jurisdiction over

-7-

Wiseman. Wiseman argues that Arkansas also filed a detainer with the federal government, but the record shows that *the United States* lodged a detainer *with Arkansas* after Wiseman was returned to state custody. R. Doc. 1-1, at 6; R. Doc. 9-8, at 1; R. Doc. 9-16, at 5. That action is consistent with Arkansas's maintenance of primary jurisdiction over the prisoner.

For these reasons, we conclude that Wiseman is not entitled to credit against his federal sentence.

## III.

Wiseman also argues that the district court erred by denying his motion for appointment of counsel. A district court may appoint counsel for a habeas petitioner if it "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). In exercising its discretion, the court "should consider the legal complexity of the case, the factual complexity of the case, and the petitioner's ability to investigate and present his claims, along with any other relevant factors." *Hoggard v. Purkett*, 29 F.3d 469, 471 (8th Cir. 1994). We review the court's decision for abuse of discretion. *Martin v. Fayram*, 849 F.3d 691, 699 (8th Cir. 2017).

The district court denied Wiseman's request for counsel, explaining that Wiseman had "thoroughly presented his claim to [the] Court, and no additional factual discovery [was] necessary to resolve the issue." The court also observed that Wiseman enjoyed access to a law library with a database that was updated every ninety days.

Wiseman now contends that the legal and factual issues were complex, and maintains that appointed counsel "could have investigated" and "cleared up any confusion" about whether a writ of habeas corpus *ad prosequendum* was issued in 1996. As the case was presented to the district court, however, the parties agreed that

a writ was issued, and there was no reason for the district court to believe that complex factual investigation was required. Nor were the legal issues so complex as to require appointment of counsel. The district court identified and analyzed the relevant doctrine and leading authorities before rendering a decision, and legal issues are subject to *de novo* review on appeal.

*       *       *

The judgment of the district court is affirmed.

_____